| | | |
|---|---|---|
| NANCY MATHIAS ADAIR<br>1004 Dartmouth Glen Way<br>Baltimore, Maryland 21212 | * | IN THE |
| | * | CIRCUIT COURT |
| Plaintiff | * | FOR |
| v. | * | BALTIMORE CITY |
| MCGUIREWOODS, LLP<br>7 St. Paul Street, Suite 1100<br>Baltimore, Maryland 21202 | * | Case No. |
| | * | |
| SERVE ON:<br>Ernest G. Wilson<br>Resident Agent<br>7 St. Paul Street, Suite 1100<br>Baltimore, Maryland 21202 | * | RDB 06CV2602 |
| and | * | |
| JOSEPH G. TIRONE<br>7 St. Paul Street, Suite 1100<br>Baltimore, Maryland 21202 | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND JURY DEMAND

Plaintiff, Nancy Mathias Adair, by her undersigned attorney, sues the Defendants and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action brought pursuant to the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq.* (the "FMLA"), and related tort claims, to obtain appropriate relief for Plaintiff.  Defendants willfully interfered with Plaintiff's rights and privileges under the FMLA by discharging her shortly after and because she requested

intermittent leave to care for her ailing mother. Plaintiff claims that this retaliatory discharge was also in contravention of the public policy of this state. Plaintiff asserts a claim of defamation by virtue of Defendants' publication of statements impugning her professional skills and work performance, and intentional infliction of emotional distress caused by the Defendants' actions. As redress for the damages she has suffered, and in the future will suffer, Plaintiff seeks legal and equitable remedies sufficient to make her whole, as more fully set forth below.

## PARTIES

2.  Plaintiff is a resident of Baltimore City, Maryland.

3.  During all times herein relevant Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2), in that she had been employed by Defendant McGuireWoods, LLP ("McGuire Woods") for more than 12 months at the time she made the leave request which is the subject matter of this action, and during the 12 month period immediately preceding her discharge, Plaintiff had worked in excess of 1,250 hours for McGuire Woods. As such, Plaintiff was and remains entitled to the rights and protections afforded by the FMLA.

4.  McGuire Woods is a law firm formed as a limited liability partnership with offices in Baltimore, Washington, Richmond, and other cities. McGuire Woods during all times herein relevant was an employer within the meaning of 29 U.S.C. § 2611(4) and, as such, was and is subject to all of the requirements imposed on employing entities by the FMLA.

5.  During all times herein relevant, the individual Defendant Joseph G. Tirone was a resident of Maryland and a manager of and partner in McGuire Woods.

6.  This Court has jurisdiction over Plaintiff's FMLA claims pursuant to 29

2

U.S.C. § 2617, and has jurisdiction over the Maryland common law claims of Plaintiff, a Maryland resident.

## GENERAL ALLEGATIONS

7.     Plaintiff began her employment with McGuire Woods in 1997, as a legal secretary.  During her tenure at McGuire Woods, Plaintiff strove to keep abreast of all software developments, took all training offered, trained other employees, and otherwise enthusiastically embraced her job.  Over the eight years of her tenure at McGuire Woods, Plaintiff worked for a number of different attorneys, usually serving three legal professionals at a time.  Throughout her tenure with McGuire Woods, Plaintiff consistently performed her duties in an efficient, conscientious and professional manner.

8.     In 2004, Plaintiff was assigned to work for, among other people, Joseph Tirone ("Tirone"), a partner in the Corporate Services Department of McGuire Woods.  Tirone was a notoriously difficult taskmaster, and had been assigned many secretaries over the years. Nevertheless, until her termination, Plaintiff worked for Tirone for about nine months and was given a mostly positive review by Tirone.  In addition, the two enjoyed a cordial working relationship until July 2005.

9.     In July 2005, while on vacation, Plaintiff was informed that her mother had a heart attack followed by open heart coronary artery bypass graft surgery and then a stroke while visiting California.

10.    Plaintiff cut her vacation short to return to work and refrain from using leave time that might be needed to care for her mother's serious health condition.  She notified her office manager, her supervisors and others that she had returned early from vacation in order

3

to save her leave time and that she would likely be needed to provide care for her mother once her mother returned to Maryland. Plaintiff's attachment to her mother and her depth of concern and anxiety over her well-being were well-known in the office. In addition, Plaintiff was known as a kind-hearted, sentimental person with deep attachments to others, and a highly professional legal secretary with a solid grasp of law and the skills needed to perform her job. Specifically, both the office manager, with whom Plaintiff was especially friendly, and her supervisors, were aware of Plaintiff's skills and vulnerabilities.

11.     McGuire Woods was aware that the FMLA applied to Plaintiff's request for intermittent leaves of absence in connection with her mother's recovery from a stroke and heart condition. McGuire Woods never raised any issue concerning whether the request qualified for consideration under the FMLA, nor Plaintiff's eligibility to request and receive such leave time.

12.     After Plaintiff's mother was well enough to travel, Plaintiff assisted her several times a week by accompanying her to medical appointments, and relieving another sibling by caring for her needs at the end of the day. This necessitated Plaintiff leaving her desk for two hours on some days, and not working past five on some evenings, in order to care for her mother.

13.     After Plaintiff requested leave time to care for her seriously ill mother, Tirone's demeanor toward her changed dramatically. For example, Tirone vociferously objected to Plaintiff's need to leave at five p.m. Tirone's objections were not based on Plaintiff's failure to finish his work, or any other rational reason. Rather, he objected to her use of intermittent leave and thus not adhering to a schedule that he insisted upon. Although Plaintiff was able to keep up

4

with the work assigned to her despite her occasional absences from the office, Tirone demanded that she spend more time at the office despite her need to care for her mother. Tirone's unreasonable behavior was perceptibly upsetting to Plaintiff. Tirone was the most senior attorney, and the only equity partner level attorney, for whom Plaintiff worked, and she was justifiably distressed by his conduct.

14.     At some point after Plaintiff's leave request was approved, Tirone and McGuire Woods decided to discharge Plaintiff to avoid the burden of having an employee who would be entitled to miss up to twelve weeks of work on an intermittent basis, and would be entitled to her previous, or an equivalent, position upon her return to work, among other rights under the FMLA. Plaintiff was not a key employee at McGuire Woods. The decisionmakers, by contrast, were experienced attorneys and human relations professionals, all of whom were well aware of their obligations under federal law not to discriminate against or retaliate against employees seeking protections afforded by the FMLA.

15.     Meanwhile, not knowing of Tirone's plan to have her employment terminated, Plaintiff requested a transfer of her duties so as not to work with Tirone, since Tirone's unsympathetic, unbending attitude and outbursts caused Plaintiff significant distress. The office manager agreed with Plaintiff that a transfer was warranted, but said that she could not attend to the issue until she returned from a three-week vacation.

16.     At the end of August, unbeknownst to Plaintiff, Tirone instructed the office manager to terminate Plaintiff's employment by the time he returned from scheduled surgery of his own.

17.     Plaintiff worked late on August 31 to finish work of two of her

5

supervisors, and it was the next day that she was asked to see the office manager, who had returned from vacation.

18.    On September 1, 2005, the office manager and a representative from McGuire Woods' Chicago office met with Plaintiff and informed her that her services were no longer necessary, effective immediately. They specifically stated that the termination was considered to be without cause, thereby entitling Plaintiff to unemployment benefits.

19.    Plaintiff was recruited to come to McGuire Woods from another Baltimore law firm, nad her excellent skills nad work performance during her tenure at McGuire Woods were widely acknowledged and appreciated, most recently in April 2005 when Plaintiff received a $1,500 salary increase.

20.    Plaintiff was shocked and upset by the decision to terminate her employment, for which she had no warning or preparation, and coming on the heels of her constant worry about her mother's health. McGuire Woods' representatives were aware of Plaintiff's psychologically fragile condition and vulnerability to emotional distress at the time that they made and communicated the decision to terminate her eight-year tenure with the firm.

21.    McGuire Woods escorted Plaintiff to the elevator "perp walk" style, without allowing her to retrieve her personal belongings or speak to any coworkers. McGuire Woods made this decision knowing that Plaintiff posed no threat to its property or conduct of its business if she were permitted to exit in a dignified manner. McGuire Woods made this decision with knowledge of or with reckless disregard for the elevation of embarrassment, humiliation and distress that this procedure caused to Plaintiff. It boxed and delivered her personal effects later. All of Plaintiff's benefits ended either on September 1 or September 30; she was offered no

6

severance pay.

22.     After her termination, Plaintiff was distraught and in a state of disbelief, convinced that McGuire Woods was a reputable law firm that had merely made an error that it would be willing to rectify. Plaintiff contacted the office manager, imploring her to reinstate Plaintiff's employment. Plaintiff reminded the office manager that the leave she took was governed by the provisions of the FMLA.

23.     McGuire Woods refused to reconsider its decision, or to pay Plaintiff any severance benefits. Moreover, it falsely informed the Department of Labor, Licensing and Regulation and, on information and belief, others, that, contrary to what its representatives told Plaintiff on September 1, the Plaintiff was terminated for poor work performance. The reasons communicated by McGuire Woods to the state agency administering the unemployment benefit program regarding Plaintiff's termination were false. The reasons were known by Defendant to be false, given that at no time did the quality of Plaintiff's work performance ever diminish to an unacceptable level.

24.     At the time she was terminated from McGuire Woods, Plaintiff earned a total compensation package of over $60,000 per year, including salary and benefits, and worked about $3,000 of overtime per year. She received health, life, disability, and retirement benefits.

25.     After her termination, Plaintiff visited health care providers, including counselors, to deal with her distress. She suffered from anxiety, loss of sleep and appetite, lost about 30 pounds as a result of her distress over the loss of her job, and suffered from severe emotional damage. She has been diagnosed with major clinical depression and post-traumatic stress disorder (PTSD), and continues to receive medication and treatment for these conditions.

26.   Plaintiff also visited other healthcare providers prior to the expiration of her health insurance benefits. By November 2005, Plaintiff had been diagnosed with malignant breast cancer, and has been undergoing treatment for the disease. When her companion attempted to let some of Plaintiff's former coworkers know that she was ill, McGuire Woods forbade the further dissemination of the information to others in the workplace, thereby isolating Plaintiff from people who had been her friends and could have provided comfort and support to her.

27.   Plaintiff has been unable because of her cancer, its treatment, and most importantly the major clinical depression and PTSD caused by the conduct of McGuire Woods, to rejoin the workforce.

28.   As a direct and proximate result of Defendant's extreme, outrageous and unlawful conduct complained of herein, Plaintiff has suffered, and in the future will suffer, back pay and fringe benefit losses, front pay losses, past and future out-of-pocket pecuniary losses, lost future earnings capacity, physical and mental pain and suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, intimidation and inconvenience, and other compensable, non-economic injuries.

### FIRST CLAIM FOR RELIEF
#### (Violation of the FMLA by both Defendants)

29.   Plaintiff incorporates the allegations set forth in paragraphs 1 through 28 of this complaint as if fully alleged herein.

30.   The FMLA provides, *inter alia,* that an eligible employee is entitled to up to 12 weeks of leave without pay during any 12-month period in order to provide care for a

8

family member with a serious health condition, and that such eligible employee is entitled to be restored to the same or equivalent position at the conclusion of the leave.

31.    At the time that Plaintiff requested intermittent leave, her mother was suffering from a serious health condition for which she had recently undergone major surgery and required a protracted and indeterminate period of recuperation at the homes of her children upon her return from her hospitalization in California.

32.    McGuire Woods, at the insistence of Tirone, terminated Plaintiff's employment shortly after her request for intermittent leave was approved. The law firm's conduct in acceding to Tirone's directive that she be terminated unlawfully interfered with, restrained and/or otherwise denied Plaintiff the opportunity to exercise, or to attempt to exercise, her rights under the FMLA.

33.    Defendants' termination of Plaintiff's employment was in violation of the FMLA, 29 U.S.C. § 2615(a).

34.    Defendants' unlawful conduct, as set forth above, was willful and wanton, and/or was done with malice or in reckless disregard for Plaintiff's rights under the FMLA.

35.    Defendants' unlawful conduct, as set forth above, was not in good faith and Defendants lacked reasonable grounds for believing that this conduct was not a violation of 29 U.S.C. § 2615(a).

36.    Defendants' unlawful conduct, as set forth above, was the proximate cause of the economic and non-economic injuries suffered by Plaintiff.

37.    Defendant Tirone is personally, jointly and severally liable for violation of the Family Medical Leave Act.

9

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## SECOND CLAIM FOR RELIEF
### (Retaliatory Discharge in Violation of
### Public Policy by Both Defendants)

38.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of this complaint as if fully alleged herein.

39.     In requesting the subject intermittent leave as described above, Plaintiff was exercising, or attempting to exercise, her lawful rights under the FMLA.

40.     Defendants terminated Plaintiff's employment because Plaintiff exercised, or attempted to exercise, her lawful rights under the FMLA.

41.     Defendants' termination of Plaintiff's employment for exercising, or attempting to exercise, her lawful rights under the FMLA was wrongful, retaliatory and in contravention of the public policy of this nation and state, as codified by the FMLA.

42.     Defendants' wrongful termination of Plaintiff's employment was willful and wanton and/or was done with malice or with reckless indifference to Plaintiff's rights and privileges.

43.     Defendants' wrongful termination of Plaintiff's employment proximately caused economic and non-economic damages to Plaintiff.

44.     Defendant Tirone is personally, jointly and severally liable for violation of the Family and Medical Leave Act.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

10

## THIRD CLAIM FOR RELIEF
### (Defamation by both defendants)

45.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 44 of this complaint as if fully alleged herein.

46.    Defendants have made statements internally within McGuire Woods, and to others, including to representatives of the Department of Labor, Licensing and Regulation indicating that Plaintiff is incompetent and was performing her job poorly.  Upon information and belief, the statements were also made to others in and out of McGuire Woods' offices.

47.    All of the above statements were false.

48.    Each statement was capable of verification.

49.    These statements were made in a context requiring careful communication, where cautionary language was required, and Defendants failed to use cautionary language.

50.    These statements were designed to hurt and injure Plaintiff.

51.    Defendants communicated these statements and innuendo on occasions which were not privileged.

52.    Any privilege which may have applied to some of the statements was forfeited by the Defendants, whose motives were actuated by common law malice, and where such statements were made with actual malice and for an improper purpose, *i.e.*, to defend against allegations of FMLA violations raised by Plaintiff.

53.    The communications constituted defamation *per se*, *i.e.*, the statements imputed to Plaintiff a lack of capacity or qualification properly to fulfill the duties or responsibilities of her job or occupation.

11

54.     As a direct and proximate result of the defamatory statements, Plaintiff has suffered damages to her reputation and standing in the community, embarrassment and humiliation, and pain and suffering.

55.     As a direct and proximate result of the conduct of Defendants, Plaintiff has incurred actual damages including injury to her reputation, severe emotional distress, humiliation and embarrassment and have incurred or will incur significant medical expenses.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## FOURTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress by both defendants)

56.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 55 of this complaint as if fully alleged herein.

57.     There is a causal connection between the wrongful conduct of Defendants and the emotional distress suffered by Plaintiff, in that the discrimination, interference, retaliation and harassing conduct of Defendants caused the extreme emotional distress suffered by Plaintiff. Tirone knew and intended that Plaintiff would suffer such distress.

58.     Although Tirone and others at McGuire Woods were aware of her distress and that she was especially susceptible to it, they permitted Tirone not only to continue to supervise Plaintiff but also to arrange her termination.

59.     Defendants' actions constitute the intentional infliction of emotional distress.

60.     Defendants' conduct was so extreme in degree that a reasonable member of the community would regard such conduct as atrocious, going beyond all possible bounds of

12

decency and as being utterly intolerable in a civilized community.

61.     Defendants' intentional, willful, deliberate, extreme and outrageous conduct inflicted severe emotional distress on Plaintiff.

62.     Plaintiff is now suffering and will continue to suffer irreparable injury, emotional distress and monetary damages as a direct and proximate result of Defendants' conduct in denying her FMLA leave rights and terminating her in retaliation for requesting them.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in her favor and jointly and severally against the Defendants, and that it order the following relief against Defendants:

A.      Declare the unlawful conduct by Defendants complained of herein to be in violation of the FMLA and of the public policy of this nation and state;

B.      Permanently enjoin Defendants, their agents, officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice which interferes with, restrains or denies Plaintiff her rights under the FMLA;

C.      Enjoin Defendants from refusing to immediately reinstate Plaintiff to the rights and benefits of her position of legal secretary, with the corresponding compensation, benefits, bonuses and company seniority as if Plaintiff had continuously held such a position since 1997;

D.      Award past and future economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, back pay and lost benefits, COBRA payments incurred by Plaintiff, front pay, and special damages comprised in part of, but not limited to, past and future costs of borrowing funds to meet financial obligations, and past and future out-of-pocket pecuniary losses;

13

E.    Award a sum equal to Plaintiff's economic damages as liquidated damages for Defendants' violation of the FMLA which was not in good faith and was done without reasonable grounds for believing that such conduct was not a violation of the FMLA;

F.    Award past and future non-economic damages, for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, intimidation and inconvenience;

G.    Award punitive damages, for all claims as allowed by law, in an amount to be determined at trial;

H.    Award attorney's fees and costs, including expert witness fees, as allowed by law;

I.    Award pre-judgment and post-judgment interest; and

J.    Grant such other and further relief as this Court deems just and proper.

Mary T. Keating
728 Deepdene Road
Baltimore, Maryland 21210
(410) 532-8900

Attorney for Plaintiff Nancy Mathias Adair

14

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues of fact raised by her Complaint.

Mary T. Keating
728 Deepdene Road
Baltimore, Maryland 21210
(410) 532-8900

Attorney for Plaintiff Nancy Mathias Adair

15